IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-1412

JOHN MEGGS, an Individual, and
ACCESS 4 ALL, INC., a Florida Not for Profit Corporation

        Plaintiffs,

vs.

LAKEWOOD TOWNHOMES ASSOCIATION, a Colorado Nonprofit Corporation

        Defendant.

_____/

# COMPLAINT

## Introduction

Plaintiffs, JOHN MEGGS, an individual, and ACCESS 4 ALL, INC., a Florida Not for Profit Corporation, ("Plaintiffs" or "Plaintiffs") on their behalf and on behalf of all other mobility impaired individuals similarly situated hereby sues the Defendant, LAKEWOOD TOWNHOMES ASSOCIATION, a Colorado Nonprofit Corporation ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the Colorado Anti-Discrimination Act, C. R. S. § 24-34-601 et seq. ("CADA").

## The Parties

1.    Plaintiff, JOHN MEGGS, is an individual over eighteen years of age and is otherwise sui juris. Although a resident of California, Mr. Meggs splits his time between California and Colorado.

2.     Plaintiff, ACCESS 4 ALL, INC., is a Florida Not for Profit Corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation. This entity was formed under the laws of the State of Florida and remains in good standing.

3.     Defendant, LAKEWOOD TOWNHOMES ASSOCIATION, a Colorado Nonprofit Corporation, owns or operates a place of public accommodation alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

### Jurisdiction and Venue

4.     Defendant's property, also known as the Satellite Hotel, is a hotel and mixed-use facility which includes condominiums and office space, located at 411 Lakewood Circle, Colorado Springs, Colorado 80910, in the County of El Paso ("Subject Property").

5.     Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

6.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7.     Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

8.     The Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the ADA.[2]

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104

9. Plaintiff, JOHN MEGGS, is an individual with disabilities as defined by and pursuant to the ADA. Mr. Meggs is a paraplegic, with no use of his legs, stemming from a severe spinal cord injury and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk or stand. Mr. Meggs requires the use of a wheelchair to ambulate.

10. Plaintiff organization, ACCESS 4 ALL, INC., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

**Factual Background**

11. Mr. Meggs is a staunch advocate of the ADA. Since becoming aware of his rights, and their constant infringement, he has dedicated his life to this cause so that he, and others like him, may have full and equal enjoyment of public accommodations without the fear of discrimination and repeated exposure to architectural barriers.

12. Mr. Meggs encounters architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, are cumbersome, arduous, and even dangerous for him and other wheelchair users.

13. The barriers to access that Mr. Meggs experiences at differing places of public accommodation are similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, and non-accessible guestrooms (even when designated "accessible" or "handicapped"). He has become endlessly frustrated and disheartened by the repetitiveness of the

---

[3] as defined by 28 CFR § 36.105(b)(1-2)

complaints he has been forced to make to the employees and management at various establishments in the past, normally to no avail.

14. Mr. Meggs has visited the Satellite Hotel on multiple occasions, his last visit occurring on or about April 15, 2022. Mr. Meggs stayed at the Satellite Hotel as an overnight guest and bone fide purchaser to avail himself of the goods and services offered to the public within but found that the Subject Property was littered with violations of the ADA, both in architecture and in policy.

15. Mr. Meggs has a reservation to return to the Satellite Hotel on January 11, 2023, during a visit to the Colorado Springs area where he is a frequent traveler, regularly conducts business, and is speculating on property. He intends to revisit the Satellite Hotel not only as an overnight guest but also to monitor any progress made with to respect to ADA compliance - he truly hopes that this visit is not made in vain.

16. Mr. Meggs has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Satellite Hotel.

17. The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

18. Thus, Plaintiffs have a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the barriers he has personally experienced which are listed in paragraph 23 of this complaint.

19. Following any resolution of this matter Plaintiffs will ensure that the Subject Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in the parties' settlement agreement or as ordered

by this Court.

# COUNT I
## Violation of Title III of the
## Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

20. Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

21. The Defendant has discriminated against the Plaintiffs, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by the ADA.

22. A preliminary inspection of the Subject Property has shown that violations of the ADA exist. That inspection, performed by Plaintiffs expert, further revealed that the remediation of all violations/barriers listed in paragraph 23 are readily achievable.

23. The following are architectural barriers and violations of the ADA that Mr. Meggs has personally encountered during his visits to the Satellite Hotel:

**Accessible Parking and Exterior Accessible Route**

a. The designated accessible parking spaces throughout the Subject Property lack compliant access aisles, in violation of the ADAAG and Section 502 of the 2010 ADA Standards. Without the presence of a compliant access aisle Mr. Meggs was forced to park in an open area of the parking lot so he could freely access his vehicle; when another vehicle parks directly next to his he cannot exit or enter.

b. The designated accessible parking spaces throughout the Subject Property contain sloping and/or cross-sloping beyond the allowable limits, a violation of the ADAAG and Section 502 of the 2010 ADA Standards. Due to excessive sloping the parking spaces are unusable

  to Mr. Meggs as they present a tipping hazard and could cause him harm and damage his wheelchair.

c. The Subject Property contains insufficient accessible parking sign, a violation of ADAAG Section 4.6 and Section 502 of the 2010 ADA Standards. Due to the insufficient signage and markings Mr. Meggs had difficulty locating the accessible parking.

d. Ramps located adjacent to the accessible parking at the Subject Property protrude into the parking areas and/or access aisles which creates a slope beyond the allowable limits, this is a violation of ADAAG Section 4.8 and Section 406.5 of the 2010 ADA Standards. This barrier has prevented Mr. Meggs from unloading safely; he, and all wheelchair users, require a level surface to safely unload from vehicles.

**Entrance Access and Path of Travel**

e. There is no compliant route from transit, sidewalk, and parking areas for Mr. Meggs to access the Satellite Hotel; this is violation of ADAAG Sections 4.1.2 and 4.3 and Sections 402, 403, 405, and 406 of the 2010 ADA Standards. Mr. Meggs could not safely access the building due to the lack of accessible route; he was forced to travel around obstacles and through the traffic area to reach the building.

f. The exterior accessible routes throughout the Subject Property are not maintained, contain abrupt changes of level, and sloping and cross-sloping beyond the allowable limits; in violation of ADAAG Section 4.3 and Sections 402 and 403 of the 2010 ADA Standards. These barriers present Mr. Meggs with a tipping hazard; he is forced to travel around obstacles while traversing the exterior accessible route from the parking lot/passenger loading zone to the hotel/lobby and throughout the Subject Property.

g. The Subject Property fails to provide a compliant accessible route to the adjacent street,

    sidewalk, and/or public transportation stop, violating Section 206.2.1 of the 2010 ADA Standards. This barrier has prevented Mr. Meggs from accessing the property from these areas and limited his modes of transportation.

h. The ramps throughout the Subject Property lack compliant level landings, contain excessive sloping and cross-sloping, abrupt changes of level, and lack compliant handrails or extensions; in violation of ADAAG Section 4.8 and Sections 405 and 405.8 of the 2010 ADA Standards. These barriers impede impede the path of travel throughout the Subject Property and present Mr. Meggs with a tipping hazard.

**Access to Goods and Services**

i. The Satellite Hotel fails to make reasonable accommodations in policies, practices, and procedures to provide for the full and equal enjoyment of disabled individuals nor does it maintain the elements which are required to be accessible and usable by persons with disabilities as required by 28 CFR § 36.211. For example, a failure to remove debris and stored goods on counter tops and a failure to maintain clearance to accessible elements and paths of travel prevented Mr. Meggs from freely traveling about the hotel and using the accessible elements, including but not limited to vending machines, tabletops, writing surfaces, and dining tables.

j. Mr. Meggs could not access the foregoing hotel amenities as they are either mounted beyond his reach or lack the proper knee and toe clearance necessary for him to approach; these barriers a violation of the ADAAG and Sections 308 and 902 of the 2010 ADA Standards. These barriers have prevented Mr. Meggs from comfortably accessing these elements within the hotel.

**Restrooms**

k.  The restrooms located within the common areas of the Satellite Hotel are not ADA compliant. The barriers to access within these restrooms include a lack of maneuvering clearance to exit, improper water closets, and lavatories that lack the requisite knee clearance; in violation of Section 601 of the 2010 ADA Standards. Mr. Meggs could not freely access the restroom without assistance.

l.  The maneuvering space provided to enter/exit the restroom is inadequate, a violation of Section 404 of the 2010 ADA Standards. Mr. Meggs could not exit the restroom freely without assistance.

m.  The lavatories within the restroom lack the requisite knee clearance which prevented Mr. Meggs from approaching and washing his hands; this is a violation of ADAAG and Section 306 of the 2010 ADA Standards.

n.  Due to its improper height, Mr. Meggs was unable to make use of the mirror within the restroom, a violation of ADAAG and the 2010 ADA Standards.

o.  The restroom contains dispensers and storage areas which are mounted i beyond Mr. Meggs' reach, a violation of ADAAG and Section 308 of the 2010 ADA Standards. Mr. Meggs was unable to reach the improperly mounted dispensers.

p.  Mr. Meggs could not transfer to the water closet due a lack of clear floor space, in violation of Section 604 of the 2010 ADA Standards.

q.  The toilet stalls are improperly designed and usable by Mr. Meggs; a violation of ADAAG Section 4.17 and Section 604 of the 2010 ADA Standards. Barriers to access within the stall include improper grab bars and flush controls which are mounted on the wall-side.

**Accessible Guestrooms and Suites**

r.  The door used to enter/exit the guestroom lacks the requisite maneuvering clearance and latch-side clearance, and thus Mr. Meggs was unable to exit the room freely without assistance. This presents wheelchair users with the potential of becoming trapped inside the room and violates ADAAG Sections 4.13.9 and 9.2.2(3) and Section 404 of the 2010 ADA Standards.

s.  The maneuvering space around the bed inside the guestrooms is inadequate and prevented Mr. Meggs from freely transferring from his wheelchair into either bed without assistance; this violates the ADAAG and Sections 305 and 806.2.3 of the 2010 ADA Standards.

t.  The drapery wands, controls on lamps, and HVAC controls are mounted beyond Mr. Meggs' reach, violating the ADAAG and Section 308, 309, and 806.2.1 of the 2010 ADA Standards.

u.  Rods and shelves within the closet and/or wall mounted units are mounted too high and lack the clear floor space required, a violation of the ADAAG and Section 308 of the 2010 ADA Standards. Mr. Meggs could not make use of these elements.

v.  The roll-in shower within the guestroom does not possess the requisite width and is outfitted with an improperly mounted spray unit, improper grab bars, an improper seat, and is obstructed by the door and a curb or lip which impedes safe access; these barriers violate the ADAAG and Sections 308, 607, 608, 608.2.2, 608.2.3, and 609 of the 2010 ADA Standards. The shower must contain a securely mounted folding seat, controls which are easily accessible from said seat and a flat surface for entry into the shower. Due to the lack of accessibility Mr. Meggs could not properly bathe.

w.  The water closet within the guestroom restroom contains flush controls which were

mounted on the wall side, a lack of clear floor space, an improper centerline, and improperly mounted grab bars; all in violation of Section 604 of the 2010 ADA Standards. Due to the foregoing barriers, which prevent Mr. Meggs from approaching the toilet and safely transferring onto it, he could not make full use of the restroom without assistance.

x. The lavatory within the restroom lacks the proper knee and toe clearance required, a violation of the ADAAG and Section 606 of the 2010 ADA Standards. Mr. Meggs could not access the lavatory because of the lack of knee clearance; he could not approach nor pull under the sink to wash his hands or brush his teeth.

y. Mr. Meggs could not make use of the tables or desk within the guestroom due to a lack of proper knee clearance and approach space, a violation of Section 4.32 of the ADAAG and Section 306 of the 2010 ADA Standards.

24. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D; and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[4]

25. The discriminatory violations described in paragraph 23 may not be an exhaustive list of the ADA violations that exist at the Satellite Hotel, but they are the result of a preliminary

---

[4] 28 CFR § 36.104

inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Meggs. Plaintiffs require thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Subject Property and violate the ADA.

26. Plaintiffs, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

27. Defendant has discriminated against Plaintiffs, and all those similarly situated, by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

28. Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to remove architectural barriers, and communication barriers that are structural in nature.[5]

29. Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[6]

30. Defendant continues to discriminate against Plaintiffs, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[7]

---

[5] 42 U.S.C. § 12181(b)(2)(A)(iv)
[6] 42 U.S.C. § 12181(b)(2)(A)(ii)
[7] 42 U.S.C. § 12181(b)(2)(A)(iii)

31.     If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[8] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

32.     Pursuant to 28 CFR § 36.304(a)(1) "any alteration" made to the Subject Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Meggs, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[9]

33.     Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

34.     28 CFR § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element at the Satellite Hotel must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

   b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

---

[8] as defined by 28 CFR § 36.401(a)(2)
[9] 28 CFR § 36.402(a)(2)

    c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

35. Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

36. Plaintiffs are without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

37. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

38. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiffs injunctive relief, including an order to require the Defendant to alter the Satellite Hotel and make the Subject Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the Defendant cure their violations of the ADA.[10]

**WHEREFORE,** Plaintiffs respectfully request:

    a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of

---

[10] 42 U.S.C. § 12188(b)(2)

      Title III of the ADA.

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to maintain the required accessible features at the Subject Property.

d. An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the Americans with Disabilities Act.

## COUNT II
### Violation of Colorado Anti-Discrimination Act, C.S.R. § 24-34-601 et seq. (CADA)

39. Plaintiffs reallege and incorporate by reference all the allegations contained in all of the preceding paragraphs.

40. John Meggs is a disabled individual as defined by C.S.R. § 24-34-301(2.5).

41. Defendant's facility is a place of public accommodation as defined by C.S.R. § 24-34-601(1).

42. Colorado law provides that no person shall be discriminated against in regard to public accommodations on the basis of disability.[11]

43. Pursuant to C.S.R. § 24-34-602(1) Mr. Meggs is authorized to bring a private action in any court of competent jurisdiction and to receive monetary damages.

44. Pursuant to C. S. R. § 24-34-602(1)(b) a person who violates provisions of the CADA based on a disability "shall be subject to the provisions of section 24-34-802." C. S. R. § 24-34-802 allows for a court order requiring compliance with the provisions of the violated section of the CADA, recovery of actual monetary damages, a statutory fine not to exceed three thousand five hundred dollars ($3,500.00), and an award of attorney fees and costs.

45. Pursuant to C.S.R. § 24-34-604 claims alleging violations of the CADA must be brought within sixty days (60) of the alleged discriminatory act, Mr. Meggs has done so here.

46. Pursuant to 3 CCR 708-1:60.1(A); the CADA, "is substantially equivalent to Federal law, as set forth in the Americans with Disabilities Act, as amended, and the Fair Housing Act concerning disability."

47. Pursuant to C.S.R. § 24-34-802(4); "a court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'American with Disabilities Act of 1990', 42 U.S.C. § 12101 et seq., and its related amendments and implementing regulations."

48. As set forth above, Defendant has violated the Colorado Anti-Discrimination Act by denying Mr. Meggs, and all other disabled individuals, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations afford to the public at a place of

---

[11] C.S.R. § 24-34-601(2)(b)

public accommodation.

49.     As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Meggs has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation.

**WHEREFORE**, Plaintiffs respectfully request:

a. That this Court assume jurisdiction.

b. An injunction ordering Defendant to comply with the the CADA.

c. The Court issue a Declaratory Judgment determining that the Defendants are in violation of the CADA.

d. An award of monetary damages to Mr. Meggs; to the maximum extent permitted.

e. Reasonable attorney's fees and costs.

f. An Order requiring the Defendant to maintain the required accessible features at the Subject Property.

g. Other relief that this Court deems just and proper and is allowable under the CADA.

Respectfully submitted on this 4th day of June 2022,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
Phone (609) 319-5399
Fax (314) 898-0458
js@shadingerlaw.com
*Attorney for Plaintiffs,*
*John Meggs and Access 4 All, Inc.*